UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. S2-4:16 CR 0512 HEA |
| | ) | |
| JAMES RICKY JOHNSON JR., | ) | |
| | ) | |
| Defendant. | ) | |

### GOVERNMENT'S TRIAL BRIEF

COMES NOW, the United States of America, by and through Jeffrey B. Jensen, United States Attorney for the Eastern District of Missouri, and Colleen C. Lang, Assistant United States Attorney for said District, and submits the following trial brief.

I.   Overview of the Facts

A.   Investigation

On Sunday, November 6, 2016, at approximately 11:11 a.m., the Franklin County Sheriff's Department responded to 50 W. Bacon Ridge Road in Sullivan, Missouri in reference to a child pornography case. Police dispatch had received a call from a woman named "A.N." A.N. reported to law enforcement that she had found child pornography pictures on her boyfriend's cell phone. A.N.'s boyfriend was the defendant, James Ricky Johnson. A.N. further reported that some of the images of child pornography were of her minor daughter, A.K.

Deputies with the Franklin County Sheriff's Department located A.N. in the driveway of the residence she shared with the defendant at 50 W. Bacon Ridge Road. A.N. told the deputies that while the defendant had been working on the barn outside, she was inside their home with

1

his cell phone. A.N. used the defendant's cell phone to look at his emails on the defendant's cell phone and noticed several emails did not have a subject line. A.N. opened one email and noticed it was of a naked girl. She then began to look at the defendant's email account from her own phone.   A.N. opened more of the defendant's emails and saw photos of her minor daughter, A.K.   In these photos of A.K., A.K. was naked and the focal point of the photo was her daughter's vagina. A.K. was eleven (11) years old.   A.N. sent a few of these child pornographic photos of A.K. to her son's phone.   A.N. did that because she was worried the defendant would find out A.N. had discovered the photos and would delete them.   A.N. then contacted law enforcement and asked A.K. about the photos. A.K. began crying and told her mother that the defendant had been molesting her. A.K. stated that the abuse had begun before they moved to 50 W. Bacon Ridge Road, where they have lived for the past two years.   The defendant texted A.N. that, "I know, you know."

At first, A.N. drove over the neighbor's house with A.K. while waiting for deputies. The defendant came over to them and began yelling at them.   A.N. told the defendant that she had called the police. The defendant threatened to "blow his head off."   The defendant took A.N's phone from her.   The defendant then left the area in his vehicle with his cell phone and A.N's cell phone.

Franklin County Sheriff's Deputies arrived at the scene at 11:40 a.m. and met with A.N. The deputies looked A.N.'s son phone. A.N. had re-opened the defendant's email on her son's cell phone.   A.N. had also taken screen shots of the defendant's emails with her son's cell phone because she was worried the defendant would try to delete the emails. The deputies saw the pictures of A.K. naked.   A.N. knew the defendant's email address and password.   A.N. had

2

changed the defendant's email password that morning when she found the photos. She provided that to the Sheriff Deputies. Det. Teresa Lustwerk, arrived on scene and escorted A.K. and A.N. to Children's Hospital.

Sheriff's Department seized three guns, a Samsung phone, and a computer from the home at 50 West Bacon Ridge Road.

The Franklin County Sheriff's Department contacted Det. Jacob Walk of the Franklin County Sheriff's Office at 11:59 a.m. Det. Walk is also a member of the St. Charles County Internet Crimes Against Children ("ICAC") task force. Det. Walk has been a member of the ICAC task force for over four years and has attended trainings on the collection and storage of electronic evidence in child pornography cases. Det. Walk is aware of how electronic evidence, like emails can easily be destroyed.

At this point, the deputies did not know where the defendant was located. They informed Det. Walk about the investigation and about the child pornography that A.N. had located in the defendant's email account. Deputies gave Det. Walk the defendant's email address and password. Det. Walk was concerned the defendant would try and destroy evidence of the crimes by deleting the emails containing the child pornography of A.K. At this time, the defendant still had his cell phone and the ability to log into his email account from that cell phone.

B.   Email Search.

Det. Walk used his ICAC laptop to log into the defendant's email account. Det. Walk wanted to confirm and attempt to preserve any evidence of child pornography in the defendant's email account. Det. Walk logged into the defendant's email account at 12:20 p.m. Det. Walk

3

activated screen-recording software on his laptop as he accessed the defendant's emails.   The screen recording software on Det. Walk's computer recorded what was happening on the screen. Det. Walk located multiple emails that the defendant had sent himself with photos attached. At first, Det. Walk located child pornography photos that appeared to have been received from the Internet and attached to emails in the defendant's "inbox."   While going through these email in an attempt to preserve them, Det. Walk noticed that someone was simultaneously trying to delete the emails[1].   The screen recording shows that at 12:28 p.m., Det. Walk located emails with child pornography attachments in the "deleted" folder of the defendant's email account.   Det. Walk began to attempt to save these evidentiary emails from being deleted by downloading them.   At 12:30 p.m. Det. Walk was "booted" out of the email account. Det. Walk logged back into the email account with the same email address and password provided to him earlier.   Det. Walk noticed that the folder, which contained deleted emails, had been cleared and the evidentiary emails that Det. Walk had noticed minutes earlier in that folder were gone.   At 12:32 p.m., Det. Walk was able to recover the deleted emails,[2] and those emails were restored to the inbox of the defendant's email account. Det. Walk began to download those evidentiary emails out of fear that the defendant would again attempt to purge them from the email account.    While Det. Walk is downloading these evidentiary emails, the defendant again begins to delete them.   Det. Walk went into the delete folder (where the defendant had moved them) and downloaded the emails out of that folder.   Det. Walk previewed the photographs attached to the emails while

---

[1] Based on the circumstances, the Government believes that the defendant was the person attempting to delete his emails from his cell phone.
[2] The email provider, "Hotmail," allows users to retrieve email that is no longer in their deleted folder by selecting a "recover" function from the recoverable items folder.

4

downloading them to determine that they were in fact child pornography and to determine whether or not the images contained the victim, A.K. Det. Walk was most concerned with locating and saving child pornography images of A.K. from being destroyed.

Det. Walk contacted Sgt. Chris Bosley, also with St. Charles County ICAC, and asked him to prepare and send a preservation letter for the Hotmail account to Microsoft.   Det. Walk was able to save fifty-two (52) emails and their attachments.   Each attachment contained at least two photos.   Some of these photos are of minor victim A.K. in lascivious display of her genitals. In at least one picture, A.K, has her mouth on the defendant's penis. In at least one picture, what appears to be the defendant's hand is touching the outside of A.K.'s vagina. The emails saved by Det. Walk from the defendant's email account, also contain child pornography received from the Internet.

A.N. told Det. Lustwerk that two years prior she found a sexually explicit photo on the defendant's phone of her niece who was about fourteen (14) year-old at the time.   At the hospital, a social worker met with A.K.   During the interview with the social worker, A.K. stated that the defendant had put his month to her breasts and he made her put her month on his penis. The abuse happened in and around the home.   A.K. stated the defendant used a cell phone and a "camera with a screen that folds," to take the pictures of her.   A.K. disclosed that the defendant had her look at pictures and videos of five-year-old children without clothes on. These images were shows to her on both the computer and a cell phone.   A.K. stated that the last time the defendant molested her was a couple of weeks prior. The abuse had begun two years earlier when they lived on Lilac Street in Sullivan.

The defendant ultimately turned himself to law enforcement in at 10:54 p.m. on

November 6, 2016.

    C.    <u>Search Warrants</u>.

On November 7, 2016, the defendant's truck was located on his brother's property outside Bourbon, Missouri. Det. Walk searched the truck, but could not locate the defendant's or A.N.'s cell phone. Det. Walk then obtained a search warrant for the home at 50 W. Bacon Ridge Rd. This is home where A.N., A.K., A.N's two sons and the defendant had lived. The defendant's parents owned the home. On November 8, 2016, Det. Walk executed the search warrant on the home. Det. Walk searched and photographed the interior of the home. The defendant's cell phone was not located, but Det. Walk was able to confirm where some of the child pornography pictures of A.K. had been taken in the home based on the background of those pictures. Det. Walk received search warrants to examine the computer and camcorder seized by the Sheriff's Department earlier. On November 16, 2016, a valid state search warrant was sent to Microsoft for the defendant's emails. A Franklin County Judge signed that search warrant. Microsoft returned the results of the email search to law enforcement on February 9, 2017. A grand jury subpoena was sent to Verizon for information about the defendant's cell phone that was never located. Verizon did confirm that the cell phone was a Samsung brand cell phone, which matches the EXIF[3] data attached to the photos of the victim.

    D.    <u>Forensics</u>

Forensic Examiner Larry McClain of the St. Charles County ICAC task force did the forensic analysis of the defendant's computer. Examiner McClain is a qualified

---

[3] EXIF data is exchangeable image file format is a standard that specifies the format information for images used by digital cameras (including cameras in smart phones).

forensic examiner. Examiner McClain will testify that he examined the defendant's HP Pavilion All-in-One computer containing a Western Digital brand hard drive. Examiner McClain removed the hard drive from the computer and attached it to a Write Blocking Device.    After creating a bit-by-bit copy or image of the hard drive, Examiner McClain then examined the contents of the hard drive using different forensic software programs, including, FTK and IEF. Examiner McClain reviewed the forensic image of the hard drive and located child pornography images on it. He will testify where he found the child pornography, as well as, the amount he located. Examiner McClain also will describe how he located evidence of peer-to-peer software on the hard drive. Examiner McClain will testify about other notable programs and documents located on the computer.

A Federal Grand Jury indicted the defendant on December 1, 2016, for one count of Production of Child Pornography.   January 25, 2017, the defendant was re-indicted by the Grand Jury and a count of Possession of Child Pornography was added.   Later the Grand Jury re-indicted the defendant again charging him with three counts of Sexual Exploitation of a Minor/Production of Child Pornography, and one count of Possession of Child Pornography.

    II.    <u>Legal Issues</u>

        A.    <u>Elements of the Offense of Sexual Exploitation of a Minor</u>

The Indictment charges defendant in Counts One through Three with Sexual Exploitation of a Minor in violation of Title 18, United States Code, Section 2251(a). The essential elements of this violation of Title 18, United States Code, Section 2251(a) are: (1) defendant knowingly employed, used, persuaded, induced, enticed, and coerced a minor to engage in sexually explicit

7

conduct, (2) for the purpose of producing a visual depiction of such conduct, and (3) the materials used to produce the visual depiction had been mailed, shipped, or transported across state lines or in foreign commerce by any means, including by computer or cellular phone.

        B.        Elements of Possession of Child Pornography

In Count Four, defendant is charged with Possession of Child Pornography in violation of Title 18, United States Code, Section 2252A(a)(5)(B). The essential elements of this offense are: (1) defendant knowingly possessed material (2) that defendant knew contained images of child pornography (3) which were visual depictions where the production of such visual depictions involved the use of a minor engaging in sexually explicit conduct and such visual depictions were of a minor engaging in sexually explicit conduct (4) that the material containing the child pornography had been mailed, shipped or transported in interstate or foreign commerce by any means, including by computer.

        C.        Definitions

"Sexually explicit conduct" means actual or simulated sexual intercourse, including genital-genital, oral-genital, anal-genital, oral-anal, whether between persons of the same or opposite sex; masturbation; and the lascivious exhibition of the genitals or pubic area of any person.

The Eighth Circuit Court of Appeals held that a depiction is lascivious when the child is nude or partially clothed, when the focus of the depiction is the child's genitals or pubic area, and when the image is intended to elicit a sexual response in the viewer. *United States v. Horn*, 187 F.3d 781, 789 (8th Cir. 1999). "[E]ven images of children acting innocently can be considered lascivious if they are intended to be sexual." *United States v. Johnson*, 639 F.3d 433, 440 (8th

8

Cir. 2011). In *Johnson*, the court explained how to determine whether images were "lascivious:"

> In determining whether images are "lascivious," we have referred to the criteria listed in *United States v. Dost*, 636 F.Supp. 828, 832 (S.D.Cal.1986), *aff'd sub nom., United States v. Wiegand,* 812 F.2d 1239 (9th Cir.), *cert. denied*, 484 U.S. 856, 108 S.Ct. 164, 98 L.Ed.2d 118 (1987). The factors in *Dost* included:
>
> (1) whether the focal point of the picture is on the minor's genitals or pubic area;
> (2) whether the setting of the picture is sexually suggestive;
> (3) whether the minor is depicted in unnatural poses or inappropriate attire considering the minor's age;
> (4) whether the minor is fully or partially clothed or is nude;
> (5) whether the picture suggests sexual coyness or a willingness to engage in sexual activity; and
> (6) whether the image is intended to elicit a sexual response in the viewer.
> *Id*.

The Eighth Circuit Model Pattern Instruction "6.18.2252A 'Lascivious' Explained," is modeled after the *Dost* factors.

In the instant offense, Count I is charged as a lascivious display of A.K.'s genitals. It is anticipated that the victim will confirm that the photographs are of her genitals taken by defendant. The images charged in Count I meet the *Dost* factors because the minor's genitals are clearly the focus of the images, shown in an unnatural pose, and meant to elicit a sexual response.

The video charged in Count II depicts the minor victim performing oral sex on a male, most likely the defendant. This image, which was located in the defendant's email account, meets the definition of sexually explicit conduct because not only does it show a sex act, it depicts lascivious exhibition of the genitals or pubic area of any person. The definition of "sexually explicit conduct" includes the "lascivious exhibition of the genitals or pubic area of

9

any person." Title 18, United States Code, Section 2256(2)(A)(v).

The images charged in Court III depict a hand touching the minor female's genitals, which again is considered sexual contact (i.e. masturbation) and, also the photograph depicts a lascivious display of the victim's genitals.   Thus, it meets the criteria listed under the definition of sexually explicit conduct defined above.   Again, these images of the minor engaged in sexually explicit conduct were located in the defendant's email account.

       D.      <u>Federal Jurisdiction</u>

          i. <u>Use of Cellular Phone and Email Affect Interstate Commerce.</u>

As for Counts One, Two, and Three, the government anticipates evidence will show that the photographs of child pornography of the victim were produced with a cellular telephone and then emailed via the Internet.   Both use of a cellular telephone and use of email affect interstate commerce, and thus, form a jurisdictional basis for the federal charges.   *See United States v. Daniels,* 685 F.3d 1237, 1246 (11th Cir. 2012) "Our case law holds that the use of a cellular phone is interstate commerce;" "it is beyond debate that the Internet and email are facilities or means of interstate commerce." *United States v. Barlow,* 568 F.3d 215, 220 (5th Cir. 2009). The Internet is a means or facility of interstate commerce. "[T]he Internet is an instrumentality and channel of interstate commerce." *United States v. MacEwan,* 445 F.3d 237, 245 (3rd Cir.2006); *see United States v. Hornaday,* 392 F.3d 1306, 1311 (11th Cir.2004) and *also see United States v. DeFogg*i, 839 F.3d 701, 713 (C.A.8th 2016), ("DeFoggi's use of the internet to access and download images and videos from PedoBook is enough in this case to satisfy the interstate commerce nexus.")

          ii. <u>Hard Drive Transported in Interstate Commerce</u>.

As to Count Four, Possession of Child Pornography, the jurisdictional basis for prosecution is that the illegal images were stored upon the materials that were transported in interstate commerce.  *United States v. McCloud*, 590 F.3d 560, 568 (8th Cir. 2009); *United States v. Pliego*, 578 F.3d 938 (8th Cir. 2009); *United States vs. Inman,* 558 F.3d 742 (8th Cir. 2009).   The Government will introduce business records or trade inscriptions that indicate the HP Pavilion computer's Western Digital hard drive was produced outside of Missouri. Fed. Rule Ev. 902(4) and (7).

The Government will introduce evidence of the Western Digital hard drive's product label to indicate the manufacturer and origin of the hard drive. The evidence falls within the residual hearsay exceptions under Fed.R.Evid. 807, and is self-authenticating under Fed.R.Evid. 902(7). *See United States v. Koch*, 625 F.3d 470, 479-80 (8th Cir. 2010) (Manufacturer's inscription on a product is admissible to prove place of manufacture); *United States v. Henry*, 3804, Slip Op. No 09, 2010 WL 4845742, *1 (8th Cir. Nov. 30, 2010); *see also United States v. Burdulis,* 753 F.3d 255, 263 (1st Cir. 2014) ("Made in China" inscription on thumb drive fell within the residual exception in Fed.R.Evid. 807, and was self-authenticating under Fed.R.Evid. 902(7)); *United States v. Saguil*, 600 Fed.Appx. 945, 946 (5th Cir. 2015) (manufacture's label was admissible under Fed.R.Evid. 807 and 902(7)).

    III.    <u>Evidentiary Issues</u>

        A.    <u>Birth Certificate</u>

The Government intends to introduce the birth certificate of "A.K." Rule 902(4) of the Federal Rules of Evidence provides that:

Extrinsic evidence of authenticity as a condition precedent to admissibility is not required

11

with respect to . . . [a] copy of an official record or report or entry therein, or of a document authorized by law to be recorded or filed and actually filed in a public office, including data compilations in any form, certified as correct by the custodian or other person authorized to make the certificates, by certificate complying with paragraph (1), (2), or (3) of this rule or complying with any Act of Congress or rule prescribed by the Supreme Court pursuant to statutory authority.

"A.K.'s" birth certificate will be used to establish that "A.K" was a minor during the time periods charged in the Indictment.[4]

### B. Reciprocal Discovery

To date, the government has provided police reports, documents, photographs, and interviews in discovery to the defense. The government also showed the child pornography images to the defense counsel. The government has requested reciprocal discovery, but has not received any discovery from the defendant. Should the defendant seek to introduce any evidence that should have been provided to the government as reciprocal discovery, the Court should exclude it pursuant to Rule 16(d)(2) of the Federal Rules of Criminal Procedure.

---

[4] The government is not required to prove that the defendant knew that "A.K." was under the age of eighteen. *United States v. Horn*, 187 F.3d 781, 789 (8th Cir. 1999).

## **CONCLUSION**

The above is a summary of points, issues, and evidence the government anticipates may arise at trial. Should any legal issues arise that have not been covered in this trial brief, the Government respectfully requests leave to submit such further memoranda as may be necessary.

Respectfully submitted,

JEFFREY B. JENSEN
United States Attorney


 *s/ Colleen C. Lang*
COLLEEN C. LANG, #56872
Assistant United States Attorney
111 S. 10th Street, Rm. 20.333
St. Louis, Missouri 63102

## CERTIFICATE OF SERVICE

I hereby certify that on May 22, 2018, the foregoing was filed electronically with the Clerk of Court for service on all counsel of record.


*s/ Colleen C. Lang*
COLLEEN C. LANG, #56872
Assistant United States Attorney